UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHIAS HAWKINS,

       Plaintiff,

  - against -

TOUSSAINT CAPITAL PARTNERS,
LLC,

       Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _May 27, 2010_

**OPINION AND ORDER**

08 Civ. 6866 (PKL)

**APPEARANCES**

SAMUEL & STEIN
38 West 32nd Street
New York, New York 10001
David Stein, Esq.
Michael Samuel, Esq.

Attorneys for Plaintiff

NORRIS McLAUGHLIN & MARCUS, P.A.
875 Third Avenue
New York, New York 10022
Bryan Blaney, Esq.
Karen Bekker, Esq.

Attorneys for Defendant

**LEISURE, District Judge.**

This is a diversity action for: (i) willful failure to pay commissions in violation of Sections 191 and 198 of the New York Labor Law; (ii) breach of employment contract; (iii) quantum meruit; and (iv) retaliatory discharge in violation of Section 215 of the New York Labor Law. Defendant, Toussaint Capital Partners, LLC ("Toussaint"), moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss each of plaintiff's, Matthias Hawkins's ("Hawkins"), causes of action. In the alternative, Toussaint moves to compel Hawkins to submit any remaining causes of action to arbitration. For the reasons stated below, Toussaint's motion to compel Hawkins's claims to arbitration is GRANTED and Toussaint's motion to dismiss Hawkins's claims is DENIED as moot.

## BACKGROUND

### I. Facts

The following facts are taken from the pleadings and do not constitute the findings of the Court. Hawkins is a resident of New Jersey. (Compl. ¶ 1.) Toussaint is a corporation organized under the laws of Delaware with its principal place of business in New York. (Id. ¶ 2.)

In or about May 2007, Toussaint offered Hawkins, who was living in Missouri, an employment position in a planned Midwest

2

office. (Id. ¶¶ 5-6.) Hawkins was to be paid on a commission basis. (Id. ¶ 8.) Soon thereafter, Toussaint decided against opening a Midwest office and changed its offer to a position as Assistant Vice President in Toussaint's New York office. (Id. ¶ 10.) Hawkins accepted this New York position and moved to New Jersey. (Id. ¶ 11.) Toussaint "orally promised" Hawkins "commissions at a rate of 35% of the revenues he generated" but told Hawkins that "the firm was not legally permitted to formally offer Mr. Hawkins commissions until he had passed a Series 7 licensing exam." (Id. ¶¶ 13-14.) On June 11, 2007, Hawkins signed the Uniform Application for Securities Industry Registration or Transfer ("Form U-4"), which contains an arbitration provision. (Bekker Aff. Ex. E at 13 ¶ 5.) On July 18, 2007, Toussaint sent an "offer letter" to Hawkins "setting forth new terms and conditions for his employment." (Id. ¶ 12.) This offer letter provided that "Hawkins would be paid a 'draw versus future productions of $3,500 per month,' which Mr. Hawkins understood to mean a draw upon commissions." (Id. ¶ 14.) In addition, the offer letter conditioned Hawkins's employment on taking and passing the Series 7 exam within forty-five days. (Id. ¶ 15.) Hawkins fulfilled this requirement "in a timely manner." (Id. ¶ 16.)

Hawkins then "began his sales efforts on behalf of Toussaint" and completed his first sales transaction on February

3

26, 2008.  (Id. ¶¶ 17-18.)  Afterwards, Hawkins sought payment
of his commissions but was surprised to learn "that he would
have to wait until Toussaint had received its fees for the deal
. . . [which] took ninety days . . . and that he would then
receive the income which he had earned at his next pay period."
(Id. ¶¶ 19-20.)  Hawkins continued to generate sales for
Toussaint and waited the ninety days before again requesting his
earned commissions but, upon asking for commissions, "was
ignored or rebuffed."  (Id. ¶¶ 21-23.)

        Hawkins ultimately "was told that he would be receiving
only $11,000.00 in commissions."  (Id. ¶ 24.)  "Hawkins
protested, and asked for an explanation as to how Toussaint had
calculated" that amount.  (Id. ¶ 25.)  "Toussaint failed to
respond, and further failed to pay even the $11,000.00 that it
admitted owing to [Hawkins]."  (Id. ¶ 26.)  "Hawkins continued
to try to obtain an explanation as well as the full amount of
monies owed him."  (Id. ¶ 27.)  However, "on June 13, 2008,
without any warning, and in retaliation for Mr. Hawkins's
attempts to obtain the monies he was owed," Hawkins alleges that
"he was unceremoniously fired by way of a letter which accused
him of unspecified 'insubordination.'"  (Id. ¶ 28.)

        Thereafter, "Hawkins received a phone call from Toussaint,
offering him his job back if he would stop asking to be paid the
commissions he had earned."  (Id. ¶ 29.)  Hawkins received a

4

"'Last-Chance Agreement,' which purported to offer [him] his job back if he would comply with certain insulting conditions, including drug tests, anger management classes, and unspecified 'community service.'" (Id. ¶ 30.) Hawkins alleges that, "in the letter, Toussaint admitted that Mr. Hawkins was entitled to 'current and future commissions generated.'" (Id. ¶ 31.) Hawkins claims that, "[b]ased upon the transactions completed at the time [he] was fired," Toussaint owes him $135,000.00. (Id. ¶ 32.)

On July 31, 2008, Hawkins initiated this action against Toussaint seeking compensatory and punitive damages, interest, costs, attorneys' fees, and an injunction reinstating his employment for the following causes of action: (i) willful failure to pay commissions in violation of Sections 191 and 198 of the New York Labor Law; (ii) breach of employment contract; (iii) quantum meruit; and (iv) retaliatory discharge in violation of Section 215 of the New York Labor Law. (Id. ¶¶ 34-55.)

## II. **Toussaint's Motion to Dismiss or Compel Arbitration**

Toussaint moves to dismiss the complaint in its entirety for failure to state a claim or, in the alternative, to compel arbitration. Toussaint argues that Hawkins has failed to plead any cause of action. (Def.'s Mem. of Law in Supp. of Its Mot.

5

to Dismiss or Compel Arbitration ("Def.'s Mem.") 2.) Toussaint
contends that it does not owe Hawkins commissions because the
July 18, 2007 offer letter, which sets forth the complete terms
of Hawkins's employment agreement with Toussaint, "contains no
provision for any commission payments to him." (Def.'s Mem. 4-5
(emphasis in original).)

In the alternative, Toussaint moves this Court to compel
Hawkins to submit his claims to arbitration under the Federal
Arbitration Act ("FAA"), 9 U.S.C. § 3. (Id. 10-12.) Toussaint
contends that Hawkins is required to arbitrate his claims under
the Financial Industry Regulatory Authority ("FINRA"), formerly
the National Association of Securities Dealers, Inc. ("NASD"),
because, by registering with FINRA, he agreed that he would
submit any dispute that "'arises out of the business
activities'" between himself and any FINRA member, including
Toussaint, to arbitration. (Id. 10 (quoting FINRA R.
13200(a)).) Toussaint concludes that "the Court must uphold the
agreement to arbitrate and compel Hawkins to submit his claims
to that process." (Id. 12.)

## DISCUSSION

First, the Court addresses the priority of Toussaint's
alternative motions. Second, after determining that the
arbitration issue takes priority, the Court discusses the

6

standard for compelling parties to submit to FINRA arbitration
and determines that each of Hawkins's claims is subject to FINRA
arbitration.

## I. The Priority of Toussaint's Alternative Motions

Toussaint moves to dismiss all of Hawkins's claims for
failure to state a claim. Toussaint also requests that, to the
extent that any of Hawkins's claims remain subsequent to the
Court's review under Rule 12(b)(6), those claims should be
compelled to arbitration. (See id. 10.) Hawkins opposes
Toussaint's request, arguing that "Defendant is inappropriately
seeking the proverbial two bites at the apple" by asking the
Court to decide the case on the merits and simultaneously asking
that it be arbitrated. (Pl.'s Mem. of Law in Opp'n. to Def.'s
Mot. to Dismiss ("Pl.'s Opp'n") 8.) The Court agrees with
Hawkins.

The U.S. Supreme Court has made clear "that, in deciding
whether the parties have agreed to submit a particular grievance
to arbitration, a court is not to rule on the potential merits
of the underlying claims." AT & T Techs., Inc. v. Commc'ns
Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d
648 (1986). "'The courts, therefore, have no business weighing
the merits of the grievance . . . or determining whether there
is particular language in the written instrument which will

7

support the claim.  The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.'"  Id. at 650 (quoting United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960)).  Furthermore, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (emphasis in original); see also 9 U.S.C. §§ 2-4.

Granting Toussaint's request for the Court to rule on the merits of its Rule 12(b)(6) motion would violate the principle that courts must refrain from reaching the underlying merits prior to compelling arbitration.  See AT & T Techs., 475 U.S. at 649; Dean Witter, 470 U.S. at 218; United Steelworkers of Am., 363 U.S. at 568.  Therefore, the Court first addresses whether to compel arbitration.

## II.  **Toussaint's Motion to Compel Arbitration**

### A.  Standard for Compelling Arbitration

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."

AT & T Techs., 475 U.S. at 649.  Determining whether a
particular dispute is subject to arbitration requires
interpreting the actual agreement between the parties.  See
United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363
U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) ("For
arbitration is a matter of contract and a party cannot be
required to submit to arbitration any dispute which he has not
agreed so to submit."); Merrill Lynch Inv. Managers v. Optibase,
Ltd., 337 F.3d 125, 131 (2d Cir. 2003) (per curium).  The FAA
"establishes a national policy favoring arbitration when the
parties contract for that mode of dispute resolution."  Preston
v. Ferrer, 552 U.S. 346, 349, 128 S. Ct. 978, 169 L. Ed. 2d 917
(2008).  The preference for arbitration is so strong that,
"under the FAA, 'any doubts concerning the scope of arbitrable
issues should be resolved in favor of arbitration, whether the
problem at hand is the construction of the contract language
itself or an allegation of waiver, delay, or a like defense to
arbitrability.'"  JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d
163, 171 (2d Cir. 2004) (quoting Moses H. Cone Mem'l Hosp. v.
Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L.
Ed. 2d 765 (1983)).

In deciding whether any part of an action should be
directed to arbitration, this Court must determine:  (i) whether
the parties had an agreement to arbitrate; (ii) the scope of

9

that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if some, but not all, of the claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. See JLM Indus., 387 F.3d at 169; Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998). The Court analyzes these factors below.

## B. Hawkins Must Submit All Claims to Arbitration

Hawkins entered into an agreement to arbitrate disputes arising between himself and Toussaint by executing the Form U-4, which provides in relevant part: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA] . . . as may be amended from time to time . . . ." (Bekker Aff. Ex. E at 3, 13 ¶ 5.) FINRA Rule 13200(a) provides that, "[e]xcept as otherwise provided in the Code [of Arbitration Procedure for Industry Disputes], a dispute must be arbitrated . . . if the dispute arises out of the business activities of a member or an associated person and is between or among:  Members; Members and Associated Persons; or Associated Persons."  FINRA R. 13200(a); see also id. 13100(f) (defining "Code").  "Member" is defined as "any broker or dealer admitted to membership in FINRA."  FINRA

10

R. 13100(o). "Associated Person" is defined as "[a] natural person who is registered or has applied for registration under the Rules of FINRA." Id. 13100(a) & (r).

There is no dispute that Toussaint is a Member of FINRA. (See Def.'s Mem. 11.) There is a dispute, however, as to whether Hawkins is an Associated Person. (See Pl.'s Opp'n 8 ("[Toussaint] cites provisions of FINRA regulations which require that certain individuals submit disputes to FINRA arbitration, but presents no evidence that Mr. Hawkins is such an individual bound by those provisions.").) The Court holds that Hawkins is an Associated Person pursuant to FINRA Rules because he "applied for registration under the Rules of FINRA" and was "formerly associated with a member." FINRA R. 13100(r) ("The term 'person associated with a member' means: (1) A natural person who is registered or has applied for registration under the Rules of FINRA . . . . "[A] person formerly associated with a member is a person associated with a member." (emphasis added)); see also Beer v. Nutt, No. 06 Civ. 9424, 2007 WL 13100, at *4 (S.D.N.Y. Jan. 3, 2007) (stating that "informal business relationships, even tenuous connections among the customer, associated person, and NASD [now FINRA] member are sufficient to compel arbitration"); In re Cont'l Broker-Dealer Corp., 368 B.R. 109, 112 n.6 (Bankr. E.D.N.Y. 2007) ("[A]n individual is bound by the arbitration provision contained in

11

the NASD [now FINRA] regulations if they join the NASD [now FINRA], even though they have no direct agreement to arbitrate with a covered third party." (citation and internal quotation marks omitted)). Accordingly, the parties' business relationship is governed by the arbitration provision in Hawkins's Form U-4 and by FINRA Rule 13200(a). The Court now turns to the standard for discerning the scope of that agreement.

Hawkins and Toussaint are bound to arbitrate any dispute that "arises out of the[ir] business activities." FINRA R. 13200(a). Determining whether Hawkins's claims arise out of his business activities with Toussaint requires "focus[ing] on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987) ("If the allegations underlying the claims 'touch matters' covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them."); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 622 n.9, 624 n.13, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). In looking to the factual allegations in the complaint, this Court must recognize the "strong federal policy favoring arbitration" by undertaking its obligation to "'construe arbitration clauses as broadly as possible.'" Oldroyd, 134 F.3d at 76 (quoting Collins

12

& Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995)); see also John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2d Cir. 2001) (recognizing that "any ambiguity in the language [of FINRA's mandatory arbitration provision] must be construed in favor of arbitration").

Hawkins's factual allegations that Toussaint refused to pay him commissions earned during his employment and discharged him for requesting these commissions form the factual bases of all four of Hawkins's causes of action. These allegations clearly fall within the scope of the parties' "business activities" because they directly implicate some of the most fundamental aspects of Hawkins's business relationship with Toussaint. Moreover, Hawkins does not argue that these allegations fall outside the scope of the parties' business activities or are excluded from the arbitration provision in Hawkins's Form U-4.

Because no federal statutory claims are asserted and no lingering claims exist that are not subject to arbitration, the Court holds that all of Hawkins's causes of action fall within the scope of the FINRA arbitration provision and shall be determined at arbitration. As a result, the Court does not address Toussaint's motion to dismiss Hawkins's claims under Rule 12(b)(6).

13

## CONCLUSION

For the foregoing reasons, Toussaint's motion to compel arbitration is GRANTED and Toussaint's motion to dismiss is DENIED as moot.  The Clerk of the Court is directed to close this motion (docket no. 6) and close this case.


**SO ORDERED.**

New York, New York

May **27**, 2010

_Peter K. Leisure_
U.S.D.J.


Copies of this Opinion and Order have been e-mailed to:

David Stein, Esq.
Samuel & Stein
38 West 32nd Street
New York, New York 10001

Bryan Blaney, Esq.
Karen Bekker, Esq.
Norris McLaughlin & Marcus, P.A.
875 3rd Avenue, 18th Floor
New York, New York 10022